IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| FRED ASHLEY, RANDY FOWLER, HENRY JUAREZ, ANDREW TURNER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:06CV00316 |
| NATIONAL LABOR RELATIONS BOARD, ROBERT J. BATTISTA, in his official capacity as Chairman of the National Labor Relations Board, PETER C. SCHAUMBER, WILMA B. LIEBMAN, PETER N. KIRSANOW, DENNIS P. WALSH, in their official capacities as members of the National Labor Relations Board, WILLIE L. CLARK, JR., in his official capacity as the Regional Director of the Eleventh Region of the National Labor Relations Board, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

OSTEEN, District Judge

Plaintiffs Fred Ashley, Randy Fowler, Henry Juarez, and Andrew Turner (collectively, "Plaintiffs") filed this action against Defendant National Labor Relations Board ("NLRB") alleging a deprivation of liberty and property interests without due process of law in violation of the Fifth Amendment. Pending before this court is Defendants' motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction. For

the reasons stated below, the court will grant Defendants' motion.

I.  **FACTUAL BACKGROUND**

Plaintiffs are all employees of Thomas Built Buses ("TBB") in High Point, North Carolina.  TBB has developed an interesting relationship with the International Union, United Automobile and Agricultural Implement Workers of America ("UAW").  On at least two occasions, employees have charged TBB with unlawfully aiding UAW in increasing its membership.  Plaintiffs recount one instance in particular where TBB helped UAW assemble employees in order to encourage them to sign up for union membership.  (Compl. ¶¶ 37-38.)  As a result of this arrangement, UAW became certified as the exclusive bargaining representative of TBB's employees.  (Compl. ¶ 38.)  In response to TBB's actions, a TBB employee filed an unfair labor practice charge with the NLRB that resulted in, inter alia, TBB withdrawing its recognition of UAW as the exclusive representative of the TBB employees.  (Compl. ¶¶ 39-42.)

Subsequent to the withdrawal, UAW renewed its attempt to serve as the exclusive representative of the TBB employees.  On June 29, 2005, the NLRB (after petition by UAW) held an election to determine whether to certify UAW as the exclusive representative of the TBB employees.  (Compl. ¶ 45.)  One day prior to the election, however, TBB circulated a memorandum to its employees giving notice of a potential increase in the cost of health benefits.  (Compl. ¶¶ 46-47.)  The memorandum stated

2

that such changes were applicable to only non-represented employees. (Id.)  UAW took advantage of the coincidental and opportune moment by distributing copies throughout the plant bearing the headline: "DID YOU SEE THIS?  THE COST OF BEING NON-UNION JUST WENT UP!"  (Compl. ¶ 48.)  After the election, the unofficial vote tally was 714 in favor of UAW and 504 opposed. (Compl. ¶ 49.)

**II. PROCEDURAL HISTORY**

Plaintiffs filed a motion to intervene with the Regional Director on July 5, 2005.  They sought to become parties to the UAW representational proceedings so that they could file objections to the conduct alleged to influence the results of the election.  (Compl. ¶ 53.)  Plaintiffs also filed Objections To Conduct Affecting the Results of the Election ("Plaintiffs' objections") with NLRB's Regional Director, claiming that the release of the health benefits memorandum before the election constituted objectionable conduct and grounds for setting aside the election results.  (Compl. ¶ 54.)  In an order dated July 8, 2005, the NLRB's Acting Regional Director denied Plaintiffs' motion and stated that the merits of Plaintiffs' objections would not be considered.  (Compl. ¶¶ 56-57.)  That same day, the Regional Director certified UAW as the exclusive bargaining representative of TBB's employees.[1]  (Compl. ¶ 58.)

---

[1] Plaintiffs make note that the Regional Director stated in the certification letter that approval was appropriate since "[n]o timely objections have been filed."  (Compl. ¶ 58.) Plaintiffs, however, were not approved as representatives with
(continued...)

3

On July 15, 2005, Plaintiffs filed an appeal with the NLRB contesting the denial of their motion to intervene and dismissal of their objections. (Compl. ¶ 59.) The NLRB Appeals Board issued an order affirming the denial of Plaintiffs' motion to intervene, and thus did not consider the merits of Plaintiffs' objections. (Compl. ¶ 62.) As a result of this decision, Plaintiffs filed the current action with this court.

In response to Plaintiffs' complaint, Defendants filed a motion to dismiss the claim under Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Defendants contend that Plaintiffs lack standing to bring a claim for deprivation of due process because Plaintiffs failed to avail themselves of the NLRB's procedures. Defendants also contend that this court lacks subject matter jurisdiction and that Plaintiffs fail to state a claim upon which relief can be granted.

**III. ANALYSIS**

The court will address Defendants' arguments in the order in which they were outlined in Defendants' brief. First, the court will address whether Plaintiffs have standing to maintain their claim, then the court will determine whether jurisdiction is appropriate and whether Plaintiffs' claim is proper. For the reasons stated below, this court finds that it lacks jurisdiction for two reasons. First, Plaintiffs lack standing to challenge the NLRB's procedures as insufficient because additional

---

[1](...continued)
the authority to submit objections.

administrative alternatives were available to them.  Second, the National Labor Relations Act, 29 U.S.C. §§ 151, et seq. ("NLRA") gives the NLRB primary exclusive jurisdiction to review matters related to unfair labor practices claims and representational issues, thus divesting the district court of jurisdiction.

### A.   Plaintiffs Lack Standing

In order to determine whether Plaintiffs may maintain this action, it is necessary to determine whether they are appropriately before this court.  Defendants contend that Plaintiffs lack standing to judicially challenge the adequacy of the NLRB's procedures because:  (1) they failed to avail themselves of the appropriate NLRB procedures, and (2) they did not exhaust the available procedures.  Plaintiffs did not directly address this contention in their response.  This court finds that Plaintiffs do not suffer an injury sufficient to confer standing to challenge the NLRB's procedures as deficient.

Federal courts, as courts of limited jurisdiction, are confined by Article III, Section 2 of the Constitution to preside over actual "cases" or "controversies."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 559, 112 S. Ct. 2130, 2136 (1992). Standing is a necessary and essential element of the jurisdictional requirements of Article III.  Id. at 560, 112 S. Ct. at 2136 (citation omitted).  In order to meet the "irreducible constitutional minimum of standing," Plaintiffs must satisfy three elements.  Id.  The first of these three elements requires Plaintiffs to have suffered an injury in fact that is

5

"(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (citations and quotations omitted). The second element requires the existence of a causal connection between the injury and alleged conduct, so that the injury is "fairly traceable to the challenged action of the defendant." Id. (citation and quotations omitted). The third element requires that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561, 112 S. Ct. at 2136 (citation and quotations omitted).

In this case, Defendants contend that Plaintiffs suffered no actual or concrete injury because they did not utilize the proper NLRB procedures. Defendants ground this contention in two slightly different legal precedents. First, Defendants direct the court to Shavitz v. City of High Point, 270 F. Supp. 2d 702, 710-11 (M.D.N.C. 2003), in which this court held that a plaintiff suffers no concrete and particularized injury in situations where he fails to utilize the procedural processes provided to him. Shavitz, 270 F. Supp. 2d at 702. Additionally, Defendants claim that the court must take into consideration the "entire panoply" of the available NLRB procedures because the standing requirement imposes upon a plaintiff a duty to exhaust administrative procedures before complaining that they are constitutionally insufficient.

### 1. Analysis under Shavitz v. City of High Point

The case of Shavitz v. City of High Point stands for the principle that one who does not attempt to use available government procedures may not later claim that such procedures are inadequate. In Shavitz, the plaintiff claimed that the City of High Point deprived him of due process for assessing a $50 civil fine against him for a red light violation detected by a traffic camera system. Shavitz, 270 F. Supp. 2d at 705. The plaintiff contended that the adjudicative procedures used by the city were insufficient, despite the fact that he could not "trace any deprivation or threatened deprivation of property to any of the adjudicative procedures . . . he question[ed] because he never made use of them." Id. at 710. The court, therefore, dismissed the case upon finding that the plaintiff "ha[d] not suffered a concrete and particularized injury as a result of [an] allegedly deficient process" when he "ha[d] not availed himself of the process Defendants ha[d] provided." Id. at 711.

In this case, Plaintiffs attempted to use the NLRB's procedures to prevent UAW from being elected the exclusive representative of TBB's employees. Plaintiffs initially filed a motion to intervene in order to submit objections, and then they filed actual objections (though this second process was most likely futile as the NLRB would only accept objections from an authorized party). (Compl. ¶¶ 53-54.) In Shavitz, the most persuasive factor supporting the finding that the plaintiff lacked standing was the fact that plaintiff did not avail himself in any manner of the procedures plainly provided to him.

7

Shavitz, 270 F. Supp. 2d at 711 ("Plaintiff has not taken advantage of the procedural processes offered to him, therefore he has not been harmed one way or another by such processes and, accordingly, cannot challenge them on due process grounds."). Defendants now ask this court to expand the holding of Shavitz by extending it to include any instance where a plaintiff availed himself of some procedures, but not all. Such a contention proposes a result that makes meeting the standing requirement unduly burdensome. Though the court views Shavitz as unpersuasive, there are alternate grounds supporting the court's finding that Plaintiffs lack injury.

**2. Analysis under the "Entire Panoply" Test**

In order to "determine whether a procedural due process violation has occurred, courts must consult the entire panoply of predeprivation and postdeprivation process provided by the [NLRB]."[2] Fields v. Durham, 909 F.2d 94, 97 (4th Cir. 1990) (citation omitted). Analyzing these processes requires examining "the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort

---

[2] Perhaps it is worth noting that the entire panoply test was used in Fields v. Durham to clarify the test used when analyzing a due process violation as it pertained to a state's procedures. The Supreme Court case, on which the Fourth Circuit relied on in Fields, did note in dicta, however, that such an inquiry would pertain to statutory and administrative procedures. See Zinermon v. Burch, 494 U.S. 113, 126, 110 S. Ct. 975, 983 (1990).

8

law." Zinermon v. Burch, 494 U.S. 113, 126, 110 S. Ct. 975, 983 (1990).

In this case, Plaintiffs did not explore the panoply of procedures available to them. Instead, Plaintiffs sought only to intervene in the representation proceedings as an interested party rather than file an unfair labor practice charge. Such limited action on behalf of Plaintiffs does not give rise to a due process claim when additional procedures were available to them.

A plain reading of the NLRB's regulations confirms that Plaintiffs utilized the wrong procedures. The NLRB guidelines used in conducting representation proceedings are published in the NLRB Casehandling Manual, Part Two-Representation Proceedings.[3] Section 11194.4, titled Tests for Granting or Denying Intervention, states: "Motions to intervene made by employees or employee committees not purporting to be labor organizations should be denied." NLRB Casehandling Manual, Pt. 2 § 11194.4. This section provides guidance on how to respond to motions to intervene made by people in the same category as Plaintiffs-unrepresented employee(s). Though the NLRB does not allow individual employees to participate in the representation proceedings as an intervenor, it allows "any person" to file an unfair labor practice claim. 29 C.F.R. § 102.9 (2006).

---

[3] This manual is available online through the NLRB's website. See http://www.nlrb.gov/nlrb/legal/manuals/default.asp.

The NLRA empowers the NLRB "to prevent any person from engaging in an unfair labor practice." 29 U.S.C. § 160(a) (2006). Any person seeking to redress an unfair labor practice initiates an investigation by filing a written and signed charge with the NLRB. NLRB v. Allis-Chalmers Corp., 563 F.2d 674 (5th Cir. 1977); 29 C.F.R. § 101.2 (2006). Then, an NLRB agent investigates the charge before sending it to a regional director for a determination of whether or not to issue a complaint against the charged party. See Link v. NLRB, 330 F.2d 437 (4th Cir. 1964). If the regional director determines there is reasonable cause to believe that an unfair labor practice has been committed, she prosecutes the case as an adversary of the charged party. 29 U.S.C. § 160(b) (2006); 29 C.F.R. §§ 102.15, 102.73 (2006). At this point, the complaining party is entitled as of right to be admitted as a party to the case. 29 C.F.R. § 102.8 (2006). This means that the party has the right to, among other things, subpoena evidence and witnesses, appear at the hearing, cross-examine witnesses, file motions and briefs, and seek judicial review of NLRB orders. 29 C.F.R. §§ 102.24, 102.31, 102.38, 102.42, 102.46 (2006).

In this case, Plaintiffs seek from the court the same type of process available to them through the NLRB. Plaintiffs complain of an absence of procedures designed to prevent their alleged injury. According to the Code of Federal Regulations, the NLRA, and the NLRB's Casehandling Manual, adequate procedures do exist to prevent or remedy unfair labor practices such as the

10

one mentioned in Plaintiffs' complaint.  Nonetheless, Plaintiffs urge this court to overlook these procedures on account of the NLRB's absolute discretion over whether or not to initiate a charge proceeding.  The Fourth Circuit has stated, however, that "procedural due process does not require certain results -- it requires only fair and adequate procedural protections."  Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 436 (4th Cir. 2002).  Since adequate procedural protections were available to Plaintiffs, they suffered no deprivation of due process.

**B.   The Court Lacks Subject Matter Jurisdiction**

The second relevant issue before this court is whether it lacks subject matter jurisdiction over the dispute.  Defendants claim that jurisdiction is absent because Plaintiffs have a duty to exhaust administrative remedies before proceeding in district court.  Plaintiffs, however, contend that an allegation of a constitutional violation vests the district court with jurisdiction under 28 U.S.C. § 1331.  The court concludes that the NLRA grants the NLRB primary jurisdiction over representation proceedings and unfair labor practices claims, thereby divesting this court of jurisdiction unless and until Plaintiffs exhaust available administrative remedies.

As a general rule, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S. Ct. 459, 463-64

11

(1938) (quotations omitted) (The Court held that the district court lacked jurisdiction because "the power to prevent any person in engaging in any unfair practice affecting commerce, has been vested by Congress in the Board [(NLRB)] and the Circuit Court of Appeals."). Adherence to this rule is important because it allows specialized agencies to handle specific issues of law, thereby preventing multiple interpretations of an agency's regulatory statute. See Garner v. Teamsters, Chauffeurs & Helpers Local Union, 346 U.S. 485, 490-91, 74 S. Ct. 161, 165-66 (1953) ("A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law.").

This tenet of law applies with equal force to the NLRB, because Congress believes "that centralized administration of specially designed procedures [is] necessary to obtain uniform application of its substantive rules and to avoid [any] diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies." Id. at 490, 74 S. Ct. at 166; see also Sears v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 192, 98 S. Ct. 1745, 1755 (1978). Congress, therefore, granted the NLRB with exclusive jurisdiction over matters that fall under the NLRA. The courts have followed this principle unless an issue is "merely a peripheral concern" of the NLRA, or if it "touch[es] interests so deeply rooted in local feeling and responsibility

that, in the absence of compelling congressional direction, [the court] could not infer that Congress had deprived the States of the power to act." Farmer v. United Bhd. of Carpenters & Joiners, 430 U.S. 290, 296-97, 97 S. Ct. 1056, 1061-62 (1977); see also San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S. Ct. 773 (1959); Muenchow v. Parker Pen Co., 615 F. Supp. 1405, 1419 (D. Wis. 1985) ("[P]laintiffs' claims must be dismissed because . . . they are preempted by the primary jurisdiction of the NLRB.").

In this case, the crux of Plaintiffs' complaint is that the NLRB's procedures are inadequate to prevent unfair and/or unlawful conduct in representation elections. Such a claim is certainly not a mere peripheral concern of the NLRA. In fact, the NLRA specifically prohibits such conduct, and many opinions of NLRB involve the same type of issues. See Waste Mgmt. of Palm Beach, 329 NLRB 198 (1999); K-Mart Corp., 336 NLRB 455 (2001). Moreover, this is not an example of a case that touches interests so deeply rooted in local feeling and responsibility that would allow a state court to exercise jurisdiction over a matter reserved for the NLRB, because those cases generally involve compelling state interests. See Belknap, Inc. v. Hale, 463 U.S. 491, 103 S. Ct. 3172 (1983).

Plaintiffs also assert that their constitutional claim removes this issue from the jurisdiction of the NLRB, or in the least, gives this court concurrent jurisdiction. While it is true that "constitutional issues raised independently of claims

13

under the Act generally fall outside of the NLRB's primary jurisdiction," the presence of a "constitutional issue in a labor dispute does not automatically remove the controversy from the NLRB's primary consideration." Garrison v. City of Lakeland, 954 F. Supp. 246, 247 (D. Fla. 1997) (citing Commc'ns Workers of Amer. v. Beck, 487 U.S. 735, 108 S. Ct. 2641 (1988)). Thus, "[w]hen the statutory and constitutional claims are premised on the same facts and the administrative process is fully capable of granting full relief, exhaustion [of administrative remedies] is required." Nat'l Treasury Employees Union v. King, 961 F.2d 240, 243 (D.C. Cir. 1992) (quotations and citation omitted).

The present controversy involves an allegation that TBB and UAW engaged in unauthorized and prohibited conduct before a representation election. This is no more than a claim for unfair labor practices within the scope of the NLRA. See 29 U.S.C. § 158 (2006). In fact, Plaintiffs include in their brief numerous citations to cases where the NLRB held such actions were violations of the NLRA, and the procedures provided by the NLRB afforded remedies to the complaining parties. (Pls.' Opp'n Defs.' Mot. Dismiss Compl. 17, n.13.) Contrary to Plaintiffs' assertion, this avenue of relief is available to anyone, not just an employer or union member. 29 C.F.R. § 102.9 (2006) ("any person" may file a claim with the NLRB). Plaintiffs' mistake as to the proper procedure for bringing their claim does not excuse them from their obligation to exhaust administrative remedies.

14

Accordingly, this court finds that it lacks jurisdiction over Plaintiffs' claim.

## IV. CONCLUSION

In order for Plaintiffs' due process complaint to withstand subject matter and jurisdictional challenges, Plaintiffs must show that the process they are challenging was inadequate (or non-existent). Plaintiffs had an avenue to seek relief through the NLRB and decided not to use it. The failure to pursue a claim through the proper channels does not give rise to a due process injury, nor does it vest this court with jurisdiction.

For the reasons stated above, Defendants' Motion to Dismiss Complaint will be granted.

An order and judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 25th day of September 2006.

/s/ William L. Osteen
United States District Judge